IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BYRON CHAMP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:19-CV-263-MAB |
| ) | |
| SHIRLEY FORCUM, BREE BARNETT, ) | |
| and NAGESWARARAO ) | |
| VALLABHANENI, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motions for summary judgment filed by Defendants Shirley Forcum, Bree Barnett, and Nageswararao Vallabhaneni (Docs. 132, 137). For the reasons explained below, both motions are granted.

BACKGROUND

Plaintiff Bryon Champ filed four separate and distinct *pro se* lawsuits alleging violations of his constitutional rights under 42 U.S.C. § 1983, for events arising out of his involuntary confinement as a pretrial detainee at Chester Mental Health Center from April 5, 2018 through August 29, 2018. *See* SDIL Case Nos. 18-cv-1986 (Doc. 18); 19-cv-26 (Doc. 14); 19-cv-263 (Doc. 17); and 19-cv-345 (Doc. 22).

In the instant case, Plaintiff alleged that the water to his toilet was shut off for a period of 55 days (May 20, 2018 – July 13, 2018) as punishment for failing to report each bowel movement to medical staff following his hernia surgery (Doc. 11; *see also* Doc. 17).

Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, the Court concluded that Plaintiff stated a plausible Fourteenth Amendment Due Process claim against Defendants Shirley Forcum, Bree Barnett, and Dr. Nageswararao Vallabhaneni because shutting off Plaintiff's toilet water for 55 days could potentially be considered punitive and excessive under the circumstances described (Doc. 17).

An attorney was recruited to represent Plaintiff after discovery on the merits commenced (Doc. 76). Attorneys were also recruited for Plaintiff in his three other cases. *See* SDIL Case Nos. 18-cv-1986 (Doc. 99); 19-cv-26 (Doc. 81); and 19-cv-345 (Doc. 105). Plaintiff's four attorneys and defense counsel from each of his cases coordinated with one another to conduct discovery in unison (*see, e.g.,* Docs. 82, 84). Plaintiff continued to be represented by counsel in this case until just shortly before discovery closed (*see* Doc. 116, Doc. 118; *see also* Doc. 140 (outlining procedural history in detail)).

Defendants filed their motions for summary judgment in February 2023 (Docs. 132, 137; *see also* Doc. 133). The Court subsequently opted not to recruit a new attorney for Plaintiff (Doc. 140; *see also* Docs. 121, 128). Plaintiff was told he needed to file his own response to Defendants' motions for summary judgment on or before August 14, 2023 (Doc. 140). Plaintiff was provided with the required notice advising him "of the consequences of failing to respond with affidavits" or other evidence (Doc. 141; *see also* Doc. 138). *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). Rather than respond to the motions for summary judgment, Plaintiff filed another motion for counsel (Doc. 142). The Court denied his request for counsel and gave a slight extension, until August

28, 2023, to respond to Defendants' motions for summary judgment (Doc. 143). Plaintiff

was warned that a failure to respond could be construed as an admission of the merits of

the motions for summary judgment (Doc. 143).

To date, Plaintiff has not filed a response. The Court construes this as an admission

on the merits of the summary judgment motions. SDIL-LR 7.1(c). That does not, however,

automatically result in judgment for the movants. *Keeton v. Morningstar, Inc.*, 667 F.3d 877,

884 (7th Cir. 2012) (citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). *See*

*also Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993) ("Nowhere in Rule 56 is the

granting of summary judgment authorized as a sanction for failing to file a timely

response to a motion for summary judgment."). The Court must still ascertain whether

Defendants have demonstrated that judgment is proper as a matter of law. *Keeton*, 667

F.3d at 884 (citing *Raymond*, 442 F.3d at 608).

## FACTS

On April 5, 2018, Plaintiff was admitted to Chester Mental Health Center as a

pretrial detainee after it was determined he was unfit to stand trial based on his refusal

to cooperate with his public defender (Doc. 137-1, p. 14; Doc. 133-1, pp. 52–53, 74–75). At

the time of Plaintiff's involuntary commitment, Chester had a protocol in place to require

all patients to report their bowel movements (Doc. 133-1, pp. 23–24; *see also* Doc. 137-4

(policy)). The purpose of the protocol was for the health, and in the best interest, of the

patients at Chester in order to monitor them for impacted stool (Doc. 133-1, pp. 23–24,

25–26 28, 32, 35–36; *see also* Doc. 137-4). Constipation, which could lead to impacted stool,

perforated bowel, and even death, was a common side effect of many of the psychotropic

drugs psychiatrists used to treat patients at Chester (Doc. 133-1, pp. 23–24, 35–36). Nursing staff was to ask each patient twice daily if they'd had a bowel movement that day, and the color, consistency, size, effectiveness, and frequency were to be documented (Doc. 137-4). If a patient had gone three consecutive days without a bowel movement, the nurse is supposed to notify the primary care physician/MOD/Practitioner (*Id.*).

For patients that refused to report bowel movements, the toilet water was turned off in order for staff to monitor for constipation (Doc. 133-1, pp. 28, 36–37; Doc. 137-4). Staff members would ensure patients had a bowel movement, then turn the water back on to flush the bowel movement (Doc. 133-1, pp. 37–38; Doc. 137-1, p. 74). This would continue until staff felt the patient was fully cooperating in reporting their bowel movements (Doc. 133-1, p. 29).

Plaintiff was asked to report his bowel movements every day that he was Chester, beginning on the first day that he arrived (Doc. 137-1, pp. 71–72, 76–77). Plaintiff admitted that all patients on the unit were asked to report bowel movements (*Id.* at pp. 75, 114). He further admitted that he refused to report his bowel movements to staff members because he felt they were not authorized to ask him about his bowel movements (*Id.* at 75).

On May 22, 2018, an Order to shut off the water to Plaintiff's toilet was entered because there was no record of whether or not Plaintiff had passed a bowel movement for several days (Doc. 137-2). Plaintiff admitted he knew that the water was turned off because he failed to report his bowel movements (Doc. 137-1, pp. 117–118). When he needed to use the restroom, he would inform staff (*Id.* at pp. 74–76). Then once he was finished, he would inform staff again, they would turn his water on from the hallway, let

him flush, and then turn the water back off (*Id.*). Plaintiff admits there was never a time

that staff refused to turn the water on so he could flush (*Id.* at 76). He admits waste never

sat in the toilet (*Id.*). And he admits there was never a time he held his bowel movement

or refused to go to the bathroom because he did not want to report it to anyone (*Id.*).

During Plaintiff's involuntary commitment to Chester, Dr. Vallabhaneni was

employed at Chester as a staff psychiatrist (Doc. 133-1, p. 12). His duties as a staff

psychiatrist included evaluating, diagnosing, and treating psychiatric patients and

making final discharge recommendations for those patients (*Id.* at 12–14). Dr.

Vallabhaneni's treatment of Plaintiff was limited to providing him therapy, which

entailed assisting Plaintiff in understanding the purpose of his treatment and providing

fitness testing (*Id.* at p. 22). Dr. Vallabhaneni did not monitor or manage Plaintiff on a

day-to-day basis (*Id.* at pp. 37, 74). While Dr. Vallabhaneni was aware that Plaintiff's toilet

water was shut off, it was not done at his direction and he was not involved in making

the decision (*Id.* at pp. 27, 37; *see also* Doc. 137-2, pp. 4–6). Dr. Vallabhaneni was also not

involved in writing the policies or procedures in place at Chester (Doc. 133-1, p. 33).

Defendant Bree Barnett was a Nurse at Chester who was involved in deciding to

turn off the water to Plaintiff's toilet due to his refusal to answer questions about his

bowel movements (*see* Doc. 137-2, p. 4; Doc. 137-3). Defendant Shirley Forcum was the

Unit Director of Plaintiff's Unit but did not provide direct medical treatment to Plaintiff

or oversee his medical treatment (Doc. 137-5). She was, however, informed that his water

was turned off on May 22, 2018, due to his refusal to answer questions about his bowel

movements (*see* Doc. 137-3).

<u>ANALYSIS</u>

Summary judgment is proper when the moving party "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In deciding a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). "Only if the court can say, on that sympathetic reading of the record, that no finder of fact could reasonably rule in the unsuccessful movant's favor may the court properly enter summary judgment against that movant." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015).

A pretrial detainee's claims regarding their conditions of confinement arises under the Fourteenth Amendment's Due Process Clause. *Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019). All manner of Fourteenth Amendment claims brought by pretrial detainees, from excessive force to inadequate medical care to the general conditions-of-confinement claim presented here, are governed by the standard of objective reasonableness set forth by the Supreme Court in *Kingsley v. Hendrickson*. *Hardeman*, 933 F.3d at 823 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–397 (2015)); *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). This standard requires the plaintiff to show that he faced conditions that posed an objectively serious threat to his health. *Hardeman*, 933 F.3d at 827 (Sykes, J., concurring) (citing *Kingsley*, 576 U.S. at 398). *Accord Mays v. Emanuele*, 853 Fed.Appx. 25, 26–27 (7th Cir. 2021); *Thomas v. Dart*, 39 F.4th 835, 841 (7th

Cir. 2022) (excessive force) (citing *Kemp v. Fulton Cnty.*, 27 F.4th 491, 496 (7th Cir. 2022);

*Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (medical care) (citing *McCann*, 909 F.3d

at 886). The plaintiff must also show that the defendant "acted purposefully, knowingly,

or perhaps even recklessly" with respect to the conditions of confinement and that the

defendant's actions were objectively unreasonable, meaning "not rationally related to a

legitimate governmental objective or . . . excessive in relation to that purpose."*Mays v.*

*Emanuele*, 853 Fed.Appx. at 26–27; *Hardeman*, 933 F.3d at 824, 827 (citing *Kingsley*, 576 U.S.

at 398). *See also Thomas*, 39 F.4th at 841 ("[A] pretrial detainee must allege . . . the defendant

made an intentional decision regarding the conditions of the plaintiff's confinement");

*McCann*, 909 F.3d at 886 (this step "focuses on the intentionality of the individual

defendant's conduct").

In evaluating objective reasonableness, the court must consider the totality of facts

and circumstances. *Kingsley*, 576 U.S. at 397; *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir.

2020), *cert. denied,* 142 S. Ct. 69 (2021); *McCann*, 909 F.3d at 886. The determination must

be made "from the perspective of a reasonable officer on the scene, including what the

officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397.

And the court must also "account for the legitimate interests that stem from the

government's need to manage the facility in which the individual is detained." *Mays v.*

*Dart*, 974 F.3d at 820 (quoting *Kingsley*, 576 U.S. at 397). "Thus 'in the absence of

substantial evidence in the record to indicate that the officials have exaggerated their

response to these considerations, courts should ordinarily defer to their expert judgment

in such matters.'" *Mays v. Dart*, 974 F.3d at 820 (quoting *Bell v. Wolfish*, 441 U.S. 520, 548,

(1979)).

In this instance, Defendants are all entitled to summary judgment. Plaintiff did not put forth any evidence from which it could be inferred that the water shut off posed an objectively serious threat to his health. Rather, the undisputed evidence shows that Plaintiff's water was turned back on as needed throughout the day. And he admitted there was never a time the waste sat in the toilet or that he held his bowel movement or refused to go to the bathroom. Therefore, no reasonable jury would conclude that shutting off Plaintiff's toilet water posed an objectively serious threat to his health. *See Mays v. Emanuele*, 853 Fed.Appx. at 26, 27 (affirming no constitutional violation where detainee's toilet overflowed onto the floor of his cell and he was kept in the cell for an hour due to security reasons, or during a second instance where he was unable to flush a bowel movement for an hour because water was turned off while officers searched cells, but his skin never touched the water and he did not become ill during either incident). *But see Hardeman*, 933 F.3d at 823–824 ("[A] defendant cannot . . . force a prisoner permanently to live surrounded by her own excrement and that of others.").

Additionally, no reasonable jury would conclude that Plaintiff's toilet water was shut off as a punitive measure. The undisputed evidence shows Plaintiff's toilet water was turned off pursuant to the facility's policy and it served a reasonable medical purpose. No evidence suggests that this medical purpose was illegitimate or that shutting off Plaintiff's toilet water was an unreasonable response under the circumstances.

Consequently, Dr. Vallabhaneni, Shirley Forcum, and Bree Barnett's motions for summary judgment (Docs. 132 and 137) are **GRANTED**. Plaintiffs' claims against these

Defendants are **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to enter judgment in Defendants' favor and to close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: September 27, 2023**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

Plaintiff is advised that this is a final decision ending his case in this Court. If Plaintiff wishes to contest this decision, he has two options: he can ask the undersigned to reconsider the Order or he can appeal to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal in the district court *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth

the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).

On the other hand, if Plaintiff wants to start with the undersigned, he can file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), but such a motion is not required to preserve his appellate rights. Any Rule 59(e) motion *must* be filed within twenty-eight (28) days of the entry of judgment. FED. R. CIV. P. 59(e), and the deadline *cannot* be extended. *See* FED. R. CIV. P. 6(b)(2). Any motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) ("This court has held that otherwise timely skeletal motions that fail to satisfy the requirements of FED. R. CIV. P. 7(b)(1) do not postpone the 30–day period for filing a notice of appeal . . . .").

So long as the Rule 59(e) motion is in proper form and filed no later than 28 days after the judgment is entered, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the motion is ruled on. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal, and the clock will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano,* 273 F.3d at 760–61; *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977).